# UNITED STATES DISTRICT COURT WESTERN DISTRICT OF WISCONSIN

**Kevin Richard Hoffman,**
Plaintiff,

v. Case No. __26-cv-154-wmc__

**Jessica Tisdale, individually;**
**Brittney Wirtz, individually;**
**Stephanie Ronnfeldt, individually;**
**Shelby Miller, individually;**
Defendants.

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(42 U.S.C. § 1983)

### I. JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343.

3. The events giving rise to this action occurred in Richland County, Wisconsin, within the Western District of Wisconsin.

4. Venue is proper under 28 U.S.C. § 1391(b).

### II. PARTIES

5. Plaintiff Kevin Richard Hoffman is a natural person and resident of Wisconsin. He is the biological father of minor child Jordan Hoffman.

6. Defendant Jessica Tisdale was at all relevant times a Child Protective Services (CPS) caseworker employed by Richland County Child and Youth Services, acting under color of state law. She is sued in her individual capacity.

7. Defendant Brittney Wirtz was at all relevant times a CPS supervisor employed by Richland County Child and Youth Services, acting under color of state law. She is sued in her individual capacity.

8. Defendant Stephanie Ronnfeldt was at all relevant times the Director of Richland County Health and Human Services, acting under color of state law. She is sued in her individual capacity.

9. Defendant Shelby Miller was at all relevant times a CPS caseworker involved in interviews and assessment of the minor children, acting under color of state law. She is sued in her individual capacity.

## III. FACTUAL ALLEGATIONS

10. Plaintiff had primary physical custody and care of his son, Jordan Hoffman, for approximately four years prior to October 2025.

11. No court order restricted Plaintiff's custodial rights at the time relevant to this action.

12. On or about October 20, 2025, a welfare check was conducted at Plaintiff's residence.

13. Plaintiff submitted to a drug test during this encounter.

14. Plaintiff was later informed that the drug test was allegedly positive for methamphetamine.

15. Plaintiff has since obtained laboratory-confirmed drug testing results that were negative for controlled substances.

16. On October 20, 2025, Defendant Tisdale required Plaintiff to sign a "Protective Plan," stating that he had failed a drug test and needed a break.

17. Plaintiff was informed that if he did not sign the Protective Plan, custody of his son would be immediately taken.

18. Plaintiff signed under threat of removal.

19. No court order was obtained prior to implementation of this Protective Plan.

20. On October 21, 2025, Plaintiff met with Defendant Tisdale, a police officer, and later supervisory personnel.

21. Plaintiff was informed that unless he agreed to continued restrictions, Jordan would be taken into custody.

22. No allegation of abuse or neglect was substantiated during this meeting.
23. Jordan and his brother made statements to CPS worker personnel indicating concerns about their mother's home environment.
24. Jordan expressed that he did not feel safe being with his mother.
25. Plaintiff informed CPS personnel that Jordan's mother had outstanding warrants and prior CPS involvement in Michigan.
26. Plaintiff further informed CPS that the mother's parental rights regarding two other children had been terminated in Michigan.
27. Plaintiff had previously obtained temporary guardianship of Jordan's brother due to concerns involving the mother.
28. Despite this information, CPS personnel allowed and facilitated Jordan's removal from Plaintiff's custody and transfer to his mother.
29. No Temporary Physical Custody order was sought.
30. No CHIPS petition was filed.
31. No judicial authorization was obtained prior to the transfer of custody.
32. Plaintiff was not afforded a hearing before his custodial rights were effectively terminated.
33. The Protective Plan remained in effect until Jordan's mother retrieved him.
34. Defendants characterized the transfer as the mother "exercising her rights," despite the State's active involvement in initiating and facilitating the transfer. Following Plaintiff's written complaint regarding the removal of his son, Defendant Ronnfeldt issued a written response confirming that a Protective Plan remained in place until such time as Jordan's mother retrieved him and stating that no judicial order was sought because there was "no legal reason" preventing the mother from doing so. The letter further acknowledged that CPS personnel coordinated and verified the mother's ability to retrieve the child during the pendency of the investigation.
35. Plaintiff has experienced severe emotional distress, loss of companionship, and disruption of the parent-child relationship as a direct result of Defendants' actions.

## IV. CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS

36. At all relevant times, it was clearly established under the Fourteenth Amendment that a parent has a fundamental liberty interest in the care, custody, and companionship of his child.

37. Absent exigent circumstances, child welfare officials may not remove a child, cause a child's removal, or otherwise interfere with a custodial parent's rights without prior judicial authorization and due process of law.

38. Courts within the Seventh Circuit have held that coercive "voluntary" safety or protective plans imposed under threat of removal do not constitute valid consent and cannot be used to bypass constitutional safeguards. See, e.g., *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003).

39. Defendants' conduct violated these clearly established constitutional principles.

## V. CLAIMS FOR RELIEF

### Count I – Fourteenth Amendment

Procedural Due Process (42 U.S.C. § 1983)

40. Plaintiff realleges paragraphs 1–39.

41. Defendants deprived Plaintiff of his fundamental liberty interest in the care and custody of his child without notice, hearing, or judicial authorization.

42. No exigent circumstances justified bypassing judicial process.

43. As a direct result, Plaintiff suffered constitutional injury.

### Count II – Fourteenth Amendment

Substantive Due Process (42 U.S.C. § 1983)

44. Plaintiff realleges paragraphs 1–39.

45. Defendants' actions were arbitrary, conscience-shocking, and not reasonably related to legitimate child safety concerns.

46. Defendants disregarded exculpatory evidence and failed to investigate material safety concerns regarding the mother's environment.

47. Plaintiff's fundamental right to family integrity was violated.

## VI. DAMAGES

48. As a direct and proximate result of Defendants' actions, Plaintiff has suffered:

a. Loss of companionship and relationship with his child;
b. Severe emotional distress and psychological harm;
c. Reputational harm;
d. Loss of parental time and bonding;
e. Other damages to be proven at trial.

49. Defendants acted under color of state law and with reckless disregard for Plaintiff's constitutional rights.

50. Plaintiff seeks compensatory damages in an amount to be determined at trial.

51. Plaintiff seeks punitive damages against each Defendant in their individual capacities.

## VII. DECLARATORY RELIEF

52. Plaintiff seeks a declaration that Defendants' actions violated his rights under the Fourteenth Amendment to the United States Constitution.

## VIII. JURY DEMAND

53. Plaintiff demands trial by jury on all issues triable.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in his favor;

B. Award compensatory damages;

C. Award punitive damages;

D. Declare that Defendants violated Plaintiff's constitutional rights;

E. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Kevin Richard Hoffman
1001 Parkview Dr #206
Richland Center WI 53581
(608) 475-4847
Thediamondsky25@outlook.com
Plaintiff, Pro Se

*[signature]*

February 11, 2026